**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X     **Docket No.:** 22-cv-10546

SIA NGEGBA,

                                    Plaintiff,                                    **COMPLAINT**

            - against –

                                                                            *PLAINTIFF DEMANDS*
                                                                            *A TRIAL BY JURY*

ADAPT COMMUNITY NETWORK, SHAKIRA
ROBINSON, *in her individual and official capacities,*
and ISABELLA DOMBROWSKI, *in her individual and*
*official capacities,* ANTOINETTE DONALDSON, *In*
*Her Individual and Official Capacities,*

                                    Defendants*.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        PLAINTIFF SIA NGEGBA, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, hereby complains of DEFENDANTS, upon information and belief, as follows:

## NATURE OF THE CASE

1.     PLAINTIFF complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.

        §§ 12101, et seq. ("ADA"), The Family Medical Leave Act, 29 U.S.C § 2601, et seq.

        ("FMLA"), New York State Human Rights Law §§ 296 et seq.("NYSHRL"), and the New

        York City Human Rights Law / New York City Administrative Code §§ 8-107, *et seq.*

        ("NYCHRL"), and seeks damages to redress the injuries PLAINTIFF has suffered as a

        result of being **discriminated and retaliated against** by DEFENDANTS due to her

        **disability and/or perceived disability**, and/or her engagement in protected activities.

2.     DEFENDANT ADAPT COMMUNITY NETWORK is a not for profit organization whose

        mission is to assist persons with disabilities. Given ADAPT'S mission, one would think

        that ADAPT would give consideration to its employees that suffer from disabilities (such

        as Plaintiff herein). However, surprisingly, ADAPT unfairly and wrongfully terminated

        PLAINTIFF due to her disabilities as described below.

3.     PLAINTIFF was employed as a Residence Program Specialist for/with DEFENDANT

ADAPT COMMUNITY NETWORK in February of the year 2020.

4.     At the time that PLAINTIFF began working at ADAPT community network, PLAINTIFF was suffering from injuries she incurred at a prior place of employment, wherein PLAINTIFF was assaulted and seriously injured by a patient therein. As a result of the assault, PLAINTIFF had/has ongoing injuries and is undergoing continuous medical treatment.

5.     Nevertheless, despite her injuries and ongoing pain, PLAINTIFF began working for DEFENDANT ADAPT COMMUNITY NETWORK. PLAINTIFF did not seek reasonable accommodations for her injuries/disabilities, but her physical condition continued to worsen over time.

6.     In November 2020, PLAINTIFF required emergency oral surgery for her teeth, which needed to be surgically removed.

7.     In addition, PLAINTIFF was undergoing significant medical treatment for other injuries she sustained when she was assaulted prior to her employment with ADAPT COMMUNITY NETWORK.

8.     PLAINTIFF presented ADAPT with periodic medical notes and letters from her doctors. ADAPT COMMUNITY NETWORK DEFENDANTS responded to PLAINTIFF'S initial doctors note and allowed PLAINTIFF to remain out of work. But, PLAINTIFF'S subsequently supplied doctors notes were ignored and/or no clear guidance or instruction was given to PLAINTIFF regarding what steps (if any) ADAPT was taking about her request for accommodations.

9.     On February 3, 2021, while PLAINTIFF was out of the office on medical leave, PLAINTIFF became eligible for FMLA benefits. DEFENDANTS failed to inform PLAINTIFF of her eligibility for said benefits, despite her continued requests for information.

10.   After several months without engaging in any interactive process with PLAINTIFF or informing PLAINTIFF about her rights under ADAPT'S policies, DEFENDANT ADAPT COMMUNITY SERVICES terminated her employment.

11.   In a retroactive attempt to cover up their failure to inform and correspond with PLAINTIFF, DEFENDANTS forged a paper trail to (falsely) make it appear as though PLAINTIFF applied for <u>FMLA</u> benefits. PLAINTIFF was never informed of her FMLA right(s) and did not apply for same, due to lack of knowledge.

12.   DEFENDANTS also forged a letter to PLAINTIFF, backdated to January 15, 2021, stating that PLAINTIFF was ineligible for <u>FMLA</u> benefits and that if PLAINTIFF did not return to work within three months, she would be terminated. This letter was never sent to, or received by, PLAINTIFF.

13.   DEFENDANTS failed to notify PLAINTIFF of an impending termination date.

14.   DEFENDANTS did not engage in any interactive process with PLAINTIFF to see if there was a way to allow her to remain employed despite her disabilities, as per the ADA. Instead, after three months, DEFENDANTS wrongfully and suddenly terminated PLAINTIFF without notice.

15.   PLAINTIFF protested this adverse employment action by DEFENDANT ADAPT and sought an explanation as to why they terminated her employment. PLAINTIFF was told that she was terminated for (allegedly) remaining out of work longer than allowed under ADAPT'S policies. However, this was never explained to PLAINTIFF before she was terminated in a manner that would have fully informed PLAINTIFF of her rights under ADAPT'S policies.

16.   DEFENDANT ADAPT COMMUNITY NETWORK intentionally kept PLAINTIFF uninformed of their policies and intentions, in an effort to make sure that PLAINTIFF would be terminated due to her ongoing medical treatment and disabilities.

17.     PLAINTIFF brings this action charging that DEFENDANTS, collectively and/or
        individually, wrongfully subjected PLAINTIFF to discrimination and retaliation on the
        basis of her **disabilities** and/or **perceived disabilities** and to **interfere with**
        **PLAINTIFF'S rights under the <u>FMLA</u>**.

### JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

18.     Jurisdiction of this Court is proper under <u>42 U.S.C.</u> §§ 12101, *et seq*., and <u>28 U.S.C.</u> §§
        1331 and 1343.

19.     The Court has supplemental jurisdiction over the claims that PLAINTIFF brought under
        State and City laws pursuant to <u>28 U.S.C.</u> § 1367.

20.     Venue is proper in this district pursuant to <u>28 U.S.C.</u> § 1391(b) as one or more
        DEFENDANTS reside within the Southern District of New York or the acts complained
        of occurred therein.

21.     By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity
        Commission ("EEOC") on September 1, 2021; (b) receiving a Notice of Right to Sue from
        the EEOC on October 6, 2022; (c) commencing this action within 90 days of the
        issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the
        filing of this Complaint, mailing copies thereof to the New York City Commission of
        Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New
        York pursuant to the notice requirements of § 8-502 of the <u>New York City Administrative</u>
        <u>Code</u>, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement
        of the instant action.

22.     A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.


### PARTIES

24.     **PLAINTIFF SIA NGEGBA ("PLAINTIFF")** is a 49 year old female. At all times

relevant to the Complaint, PLAINTIFF NGEGBA was employed at DEFENDANT ADAPT COMMUNITY NETWORK as a Residence Program Specialist.

25. **DEFENDANT ADAPT COMMUNITY NETWORK (hereinafter "ADAPT")** is a not-for-profit corporation organized under the Not-For-Profit Corporation Law of the State of New York. ADAPT Community Network, formerly known as United Cerebral Palsy of New York City, provides community programs and services for people with cerebral palsy and other disabilities. DEFENDANT ADAPT employs well over 15 employees.

26. Upon information and belief, **DEFENDANT SHAKIRA ROBINSON (hereinafter "DEFENDANT ROBINSON")** is/was a Director at ADAPT. DEFENDANT ROBINSON had the ability to affect the terms and conditions of PLAINTIFF'S employment, including but not limited to making determinations related to PLAINTIFF'S request for reasonable accommodations. DEFENDANT ROBINSON is being sued herein in her official and individual capacities.

27. Upon information and belief, **ISABELLA DOMBROWSKI (hereinafter "DEFENDANT DOMBROWSKI")** is a Director of Employee and Labor Relations at ADAPT. At all times, DEFENDANT DOMBROWSKI had the ability to affect the terms and conditions of PLAINTIFF'S employment, including administering and overseeing PLAINTIFF'S medical leave/benefits. DEFENDANT DOMBROWSKI is being sued herein in her official and individual capacities.

28. **DEFENDANT ANTOINETTE DONALDSON** is and/or was a "Benefits Specialist" at DEFENDANT ADAPT. As an HR representative and person in charge of medical leaves/benefits (such as FMLA and disability leaves) DEFENDANT DONALDSON had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT DONALDSON is being sued herein in her Individual and official capacities.

29. Collectively, DEFENDANTS **ADAPT, ROBINSON and DOMBROWSKI** will be referred to as **"ADAPT DEFENDANTS."**

## MATERIAL FACTS

30.     PLAINTIFF was hired by ADAPT in November 2020.

31.     A year prior to PLAINTIFF'S hiring at ADAPT, on November 19, 2019, PLAINTIFF was injured when she was brutally attacked and assaulted by a patient/resident while she was working for a different employer.

32.     As a result of the assault, PLAINTIFF was caused to be severely maimed/injured, was suffering from disabilities, and was receiving workers compensation benefits from her prior employer as a result.

33.     On or about February 2, 2020, PLAINTIFF was hired by DEFENDANT ADAPT as a Residence Program Specialist.

34.     PLAINTIFF worked a full time schedule and was paid at a rate of $16 per hour, in addition to medical benefits.

35.     At all times, PLAINTIFF performed the functions of her employment in an above-satisfactory manner and was never written-up or disciplined for performance related issues.

36.     PLAINTIFF was/is qualified to perform the duties of her employment.

37.     Nevertheless, while at ADAPT, PLAINTIFF was still injured and/or receiving physical therapy and rehabilitation for injuries and disabilities sustained at her previous place of employment.

38.     PLAINTIFF tried to put her pain aside and report to work at ADAPT for several months, without accommodations, because she needed her employment.

39.     On or about November 20, 2020, PLAINTIFF was scheduled for dental emergency surgical treatment, which included having a substantial number of her teeth surgically removed and replaced.

40.     In addition, PLAINTIFF was undergoing extensive physical therapy due to ongoing head,

6

neck and spinal injuries, which were debilitating and were causing PLAINTIFF extreme pain and discomfort.

41.   On November 20, 2020, PLAINTIFF provided DEFENDANT ADAPT with a medical note from her doctor specifying that she had to undergo emergency surgery.

42.   As a result of the surgery, PLAINTIFF'S doctor recommended that PLAINTIFF stay home as long as needed to recover therefrom.

43.   PLAINTIFF provided the medical note to ADAPT in the normal course and sought a reasonable accommodation – to stay home so that she could recover from surgery.

44.   PLAINTIFF provided the medical note to DEFENDANT ROBINSON on November 20, 2020.

45.   On the same day, DEFENDANT ROBINSON received the medical note and responded, "*we will only need the letter if you are out for 3 days. . .if you are not working tomorrow, please call and report your call out*."

46.   PLAINTIFF did as instructed and also provided ADAPT with periodic medical notes wherein her doctors continued to advise ADAPT that PLAINTIFF was being treated with pain management and physical therapy for ongoing injuries.

47.   Among other things, PLAINTIFF suffered from radicular neck and back pain, spinal injuries and other ailments that required ongoing physical therapy and pain management.

48.   These injuries, qualified as disabilities and they were substantial impairments, for which PLAINTIFF was being medically treated, which affected PLAINTIFF'S normal life functions, including eating, talking, moving, sitting, walking, turning her head/neck, etc.

49.   By January 2021, PLAINTIFF continued to supply ADAPT with periodic doctor's notes, which indicated that PLAINTIFF was not able to return to work due to ongoing medical treatment.

50.   PLAINTIFF continued to supply doctor's notes to ADAPT, but ADAPT offered no response

to PLAINTIFF and/or otherwise remained silent about PLAINTIFF'S continued requests for accommodations.

51.     On or about February 4, 2021, PLAINTIFF supplied ADAPT with another doctor's note, which indicated that PLAINTIFF was still undergoing treatment for the above described injuries/ailments.

52.     On the same day, PLAINTIFF received an email from DEFENDANT ROBINSON stating, "*Hello Sia, you should have received mail from adapt regarding how to move forward while on leave. I will forward this [medical note] to HR but moving forward follow the directions provide[d]."*

53.     In response, PLAINTIFF stated that she was waiting for a discussion about ADAPT'S medical leave policies and that she was awaiting the notification from ADAPT'S HR regarding medical leave, as stated by DEFENDANT ROBINSON.

54.     To this email, wherein PLAINTIFF indicated that she was "*awaiting the notification*" for ADAPT, PLAINTIFF received no response and DEFENDANTS went silent once again.

55.     ADAPT never contacted PLAINTIFF; never sent the notification "*about moving forward while on leave,*" as indicated by DEFENDANT ROBINSON, and intentionally kept PLAINTIFF in the dark about her employment benefits and status.

56.     Nevertheless, PLAINTIFF continued to send ADAPT periodic doctor's notes to keep ADAPT appraised of her medical situation.

57.     In response to PLAINTIFF'S ongoing doctor's notes, ADAPT did not contact PLAINTIFF regarding her medical situation or her requests for reasonable accommodations.

58.     ADAPT did not send PLAINTIFF any notification(s) about her medical leave, ADAPT'S medical leave policies, reasonable accommodations, or her employment status as promised.

59.     ADAPT engaged in no interactive process or cooperative dialogue with PLAINTIFF

as required by the statutes asserted in this Complaint.

60.     ADAPT did not provide PLAINTIFF with any written notifications about what accommodations (if any) ADAPT was providing to PLAINTIFF.

61.     While PLAINTIFF was out of the office on medical leave, as of February 3, 2021, PLAINTIFF became eligible for, and was entitled to, FMLA benefits.

62.     PLAINTIFF was hired and started work on February 3, 2020. During her tenure, PLAINTIFF was a full-time employee and routinely worked (well) over 40 hours per week.

63.     As of December 18, 2020, PLAINTIFF worked at least 1,454 hours for the previous year. Therefore, at the time PLAINTIFF first sought medical leave, PLAINTIFF worked over the 1250 hours required for FMLA benefits.

64.     PLAINTIFF submitted her doctor's note and began to take medical leave on January 13, 2021. Less than a month later, on February 3, 2021, PLAINTIFF was working at DEFENDANT ADAPT for a year, worked over 1250 hours, and was entitled to FMLA benefits.

65.     However, PLAINTIFF was never advised of her rights under the FMLA, nor was she offered FMLA leave when she became eligible.

66.     DEFENDANTS had a legal duty/obligation to inform PLAINTIFF of her FMLA rights and benefits.

67.     PLAINTIFF continued to ask DEFENDANTS to explain her medical leave rights because PLAINTIFF was unaware of same.

68.     DEFENDANTS had every opportunity and occasion to inform PLAINTIFF of her rights and explain the parameters of FMLA leave to PLAINTIFF.

69.     Nevertheless, DEFENDANTS intentionally refused/failed to inform PLAINTIFF of her FMLA rights and, instead, DEFENDANTS forged (purported) FMLA paperwork under the PLAINTIFF'S name, while she was unaware, at some point after PLAINTIFF was terminated.

70. After PLAINTIFF was terminated, and after PLAINTIFF filed a complaint in the EEOC, DEFENDANTS doctored FMLA paperwork to make it appear that PLAINTIFF was offered same.

71. However, DEFENDANTS' forged paperwork was not seen, signed or acknowledged by PLAINTIFF because it was created after PLAINTIFF was terminated (as described below).

72. Nevertheless, prior to her termination, DEFENDANTS left PLAINTIFF unaware of her FMLA rights.

73. PLAINTIFF continued to ask DEFENDANTS to explain her benefits and was given no such explanation.

74. DEFENDANTS *did not* advise PLAINTIFF about <u>FMLA</u>.

75. DEFENDANTS *did not* inform PLAINTIFF about medical leave, disability leave or short term disability.

76. Since DEFENDANTS knowingly failed to inform PLANTIFF of her rights under federal, state law, as well as under company policies, PLAINTIFF was not aware that <u>FMLA</u> even existed.

77. In an attempt to cover up this gross and willful negligence, DEFENDANTS forged a paper trail to falsely support that PLAINTIFF was advised about her rights.

78. However, the FMLA paperwork under was forged by DEFENDANTS to try to retroactively cover up their failures to inform and engage in an interactive dialogue with PLAINTIFF.

79. The handwriting on the forged paperwork was not PLAINTIFF's handwriting and in place of PLAINTIFF'S signature, DEFENDANTS wrote in, *"Unable to sign"*.

80. PLAINTIFF was indeed, "unable to sign" since the document was never presented to PLAINTIFF in the first place. This forged paperwork was backdated to January 14, 2021, a time in which PLAINTIFF was not able to come into work due to her disabilities.

81.     PLAINTIFF could not have been the one to fill out this paperwork since she was neither present, nor working, in the office at the time that said paperwork was supposedly filled out.

82.     To keep up this charade of compliance, DEFENDANTS also forged a letter to PLAINTIFF, backdated to January 15, 2021, stating that PLAINTIFF **did not** qualify for FMLA.

83.     This was also false. DEFENDANTS knew, or should have known with basic inquiry, that PLAINTIFF met the prerequisites for FMLA leave.

84.     The letter also contained information on DEFENDANT ADAPT's policies and benefits, information, which was never provided to PLAINTIFF despite her continued requests for it. This false letter also (purportedly) warned PLAINTIFF that:

> "If we do not hear from you within **three (3) months** from the date of this letter about your plans and availability, we will have no option but to assume that you have decided not to return to work at **ADAPT Community Network** and we will then terminate your status as an employee. We will not provide any additional notice at that time. If you have any questions about other benefits you believe may be available to you, or if you want to discuss this determination, please call Human Resources as soon as you receive this letter so that we may address your concerns promptly." (Emphasis in original).

85.     The forged letter was signed by DEFENDANT ANTOINETTE DONALDSON, DEFENDANTS ADAPT'S "Benefits Specialist" and was supposedly cc'd to DEFENDANT ROBINSON.

86.     DEFENDANT DONALDSON made absolutely no attempt to contact PLAINTIFF or to discuss PLAINTIFF'S medical leave.

87.     DEFENDANT DONALDSON did not engage in any interactive process or cooperative dialogue with PLAINTIFF at any time.

88.     DEFENDANT DONALDSON forged documents in PLAINTIFF'S name, and created false medical leave documentation, and did not inform PLAINTIFF of her

options or rights before (or after) doing so.

89. Had DEFENDANTS ever actually sent PLAINTIFF the forged letter informing her of her rights and benefits, PLAINTIFF would have been on notice of DEFENDANT ADAPT's leave policy and could have taken the necessary steps to resume her employment before the termination date laid out in the forged letter.

90. In other words, had DEFENDANTS taken the painless step of corresponding with and informing their employee [PLAINTIFF] of her rights, then PLAINTIFF would not have been terminated.

91. PLAINTIFF continued to contact DEFENDANTS to inform them of her status and was ignored, until she was wrongfully terminated.

92. DEFENDANTS' refusal to properly inform PLAINTIFF of her FMLA rights constituted an interference with PLAINTIFF'S rights under the FMLA.

93. ADAPT did not properly inform PLAINTIFF about its medical leave policies, nor did it advise PLAINTIFF of the parameters of the medical leave being offered to PLAINTIFF.

94. ADAPT did not seek further information from PLAINTIFF in response to her continuous medical notes being provided to ADAPT.

95. ADAPT did not make PLAINTIFF aware when she would be required to return to work.

96. ADAPT did not (directly or indirectly) advise PLAINTIFF that her job would be terminated if she did not return to work by a date certain.

97. Instead, ADAPT continued to accept her doctor's notes in silence. As such, PLAINTIFF continued to send medical notes while awaiting a word from ADAPT.

98. Upon information and belief, DEFENDANT ROBINSON was not forwarding PLAINTIFF'S medical notes to HR as she promised, in an effort to setup PLAINTIFF for termination.

99. In the alternative, if ADAPT'S HR, DEFENDANTS DOMBROWSKI and

DONALSON, did receive PLAINTIFF'S doctors' notes from ROBINSON, they all decided to remain silent about same in an effort to set up PLAINTIFF for termination.

100.   ADAPT DEFENDANTS' conduct was both discriminatory, and in retaliation for PLAINTIFF notifying them of her disabilities, perceived or actual, and/or in   retaliation for requesting reasonable accommodations.

101.   PLAINTIFF, unaware about what ADAPT was doing as far as her employment and medical leave were concerned, continued to send ADAPT medical notes throughout the following months, March through May 2021.

102.   PLAINTIFF wanted to be sure that she complied with the ADAPT'S policy to provide ADAPT with doctor's/medical notes if she was going to be out of the office for medical reasons – to protect her job.

103.   Without a phone call, communication or warning of any kind, in response to PLAINTIFF'S medical note forwarded to ADAPT in May 2021, ADAPT sent PLAINTIFF a sudden letter of termination on May 14, 2021.

104.   Specifically, PLAINTIFF received a letter from ADAPT, dated 5/14/2021, stating, inter alia: "*we are sending this confirmation that your employment with Adapt Community Network ended effective on May 4, 2021. . .Please do not hesitate to contact me or  your director if you have any questions with regard to the above.*"

105.   PLAINTIFF was shocked by this (belated) notice.

106.   Clearly, ADAPT was easily able to send PLAINTIFF the letter of termination communication, yet had previously failed to provide PLAINTIFF notices regarding her ongoing requests for accommodations and/or information regarding the parameters of medical leave prior to her termination.

107.   At no time prior to this termination notice was PLAINTIFF ever advised that her employment was in jeopardy if she did not return to work by May 4, 2021.

108.   Indeed, PLAINTIFF continued to wait for some kind of information from ADAPT about their medical leave policy, and her medical leave, which never came.

109.   Further, to add insult to injury, DEFENDANTS callously ended PLAINTIFF'S employment on May 4, 2021, and did not create a notification of termination to PLAINTIFF until over ten days after her termination – on May 14, 2021.

110.   There was no (good faith) attempt by ADAPT to properly inform PLAINTIFF that she had to return to work by May 4, 2021.

111.   Further, when PLAINTIFF did not return to work on May 4, 2021, ADAPT did not follow up with PLAINTIFF (despite her ongoing doctors' notes) to gain information about PLAINTIFF'S return or ability to work.

112.   Further, ADAPT held on to this communication as PLAINTIFF did not receive notification of her termination until on or about May 26, 2021. **As such, PLAINTIFF was terminated for almost a month before she was actually informed of said termination.**

113.   DEFENDANTS waited a month to advise PLAINTIFF of her termination in an effort to make sure that PLAINTIFF would not know of her termination until it was too late to contest same.

114.   In shock by this notice, on May 26, 2021, PLAINTIFF immediately sent a letter to ADAPT wherein she protested her wrongful termination, sought an explanation and complained that her termination was discriminatory.

115.   PLAINTIFF questioned why ADAPT waited a month to send her a letter of termination, which was allegedly executed on May 4, 2021.

116.   In response, the next day (5/27/2021) PLAINTIFF received a communication from HR Representative, DEFENDANT ISABELLA DOMBROWSKI, stating, "*I am in receipt of your letter, I will review and get back to you.*"

14

117.  PLAINTIFF did not hear from DEFENDANT DOMBROWSKI for almost another week, while PLAINTIFF waited, in distress, for a response about her lost employment.

118.  Knowing the DEFENDANTS would go for weeks without contacting PLAINTIFF due to their history of communications (or lack thereof) with PLAINTIFF, PLAINTIFF was forced to write follow up email communications to DEFENDANT DOMBROWSKI wherein she asked for an explanation of ADAPT'S process and an explanation as to why PLAINTIFF was terminated.

119.  In addition to prompt a response from ADAPT, PLAINTIFF also send ADAPT DEFENDANTS a hard copy letter, wherein she protested her wrongful termination, sought an explanation and complained that her termination was discriminatory.

120.  In response to PLAINTIFF'S communications, PLAINTIFF received an email response from DEFENDANT DOMBROWSKI on June 2, 2021 stating, "*__please be advised that you exhausted your FMLA and failed to return prior to exhausting your '90 Limbo' period__*."

121.  As ADAPT DEFENDANTS never contacted PLAINTIFF to explain their medical leave policy, never explained to PLAINTIFF that she was (allegedly) on FMLA leave and did not explain to PLAINTIFF what "*__90 Limbo__*" meant, or that she was on some kind of leave involving something called "*__90 Limbo__*."

122.  PLAINTIFF had no idea what "*__90 Limbo__*" was because she was never informed and ADAPTS' personnel and HR policies does not explain what "*90 Limbo*" is.

123.  Upon information and belief, DEFENDANTS DOMBROWSKI and/or DONALDSON were in charge of personnel issues including but not limited to medical leave and reasonable accommodations.

124.  Upon information and belief, DEFENDANT ROBINSON did, or was supposed to, forward PLAINTIFF'S periodic medical notes to DEFENDANTS DOMBROWSKI and/or

DONALDSON for evaluation.

125.   It was clear that ADAPT intended for PLAINTIFF to be uninformed about her rights, entitlements, benefits and ADAPT'S policies and that ADAPT kept PLAINTIFF in the dark because it intended to end her employment, due to her ongoing injuries, medical treatments and disabilities.

126.   Knowing that PLAINTIFF'S medical situation and treatments were ongoing because PLAINTIFF continued to send ADAPT her medical notes, ADAPT made the summary determination to terminate PLAINTIFF without engaging in any form of cooperative dialogue with PLAINTIFF, or her doctor, to determine whether PLAINTIFF could be accommodated or could perform the duties of her employment.

127.   ADAPT did not assess whether any accommodations that could have been granted to PLAINTIFF would have created a hardship on ADAPT before terminating PLAINTIFF'S employment.

128.   Upon information and belief, DEFENDANT ADAPT has a practice of refusing to grant reasonable accommodations to its employees (such as PLAINTIFF), who have any disability or medical condition that prevents them from functioning at 100% capacity.

129.   Granting PLAINTIFF further reasonable accommodation(s) and/or informing PLAINTIFF of her rights/benefits would not have conflicted with the policies of ADAPT, nor would it have created a hardship on ADAPT.

130.   DEFENDANT ADAPT made no assessment as to whether continuing to accommodate PLAINTIFF would create any undue hardship.

131.   DEFENDANT ADAPT did not assess PLAINTIFF'S medical circumstances before summarily terminating her employment.

132.   DEFENDANT ADAPT did not seek permission to speak to PLAINTIFF'S doctors to find out how/if PLAINTIFF could be accommodated.

133.   As per the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT ADAPT failed to afford PLAINTIFF a cooperative dialogue or an interactive process.

134.   Specifically, as per <u>NYCHRL</u> § 8-107(28)(d), upon reaching a final determination <u>at the</u> <u>conclusion of a cooperative dialogue</u> ADAPT DEFENDANTS were obligated to provide PLAINTIFF with a written final determination identifying any accommodation granted or denied. <u>This was not done for PLAINTIFF</u>.

135.   Also, as per <u>NYCHRL</u> § 8-107(28)(e), the determination that no reasonable accommodation would enable PLAINTIFF to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or ADAPT has attempted to engage, in a cooperative dialogue. <u>This was not done for PLAINTIFF</u>.

136.   ADAPT DEFENDANTS were, or should have been, aware of their obligations listed above and intentionally refused to obey the law.

137.   Contrary to the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT ADAPT <u>did not</u> respond to PLAINTIFF'S medical notes promptly, despite the urgency and reasonableness of the request.

138.   Contrary to the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT ADAPT sought to obstruct the cooperative dialogue and deter PLAINTIFF from requesting the accommodation.

139.   PLAINTIFF may have been able to perform the regular and customary everyday duties of her job with an accommodation.

140.   If ADAPT DEFENDANTS engaged in an interactive/cooperative process with PLAINTIFF, ADAPT would have known that PLAINTIFF could be accommodated.

**141.   COLLECTIVE DEFENDANTS' conduct was a <u>continuing violation</u> of PLAINTIFF'S rights.**

142.   As a result of ADAPT DEFENDANTS' actions, PLAINTIFF is being humiliated, degraded,

victimized, embarrassed and caused severe financial and emotional distress.

143.    As a result of the acts and conduct complained of herein, PLAINTIFF is suffering a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

144.    DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, punitive damages as against DEFENDANTS are appropriate.

### AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION/ RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT (*Against Corporate Defendant ADAPT*)

145.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

146.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

147.    DEFENDANT ADAPT was PLAINTIFF'S employer.

148.    PLAINTIFF suffers from disabilities and DEFENDANT ADAPT perceived that PLAINTIFF has and/or suffers from disabilities.

149.    PLAINTIFF presented a doctor's notes to DEFENDANTS and sought a reasonable accommodations.

150.    ADAPT refused to accommodate PLAINTIFF and declined to engage in the interactive

process when PLAINTIFF presented medical notes that her injuries were ongoing and required ongoing medical treatment.

151. ADAPT was aware of its obligation to engage in an interactive process and to assess whether it could accommodate PLAINTIFF, short of termination.

152. DEFENDANTS knew or should have known of their continuing obligation to accommodate PLAINTIFF under the ADA.

153. DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations.

154. DEFENDANTS engaged in an unlawful discriminatory practice by summarily terminating PLAINTIFF because of her disabilities and/or perceived disabilities.

155. As a result of her engagement in protected activity, DEFENDANTS ignored and denied PLAINTIFF her rights, while keeping her in the dark about her employment, in an ongoing effort to humiliate PLAINTIFF.

156. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

157. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

<strong>AS A SECOND CAUSE OF ACTION<br><u>INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT</u><br>(<em>Against All Defendants</em>)</strong>

158. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

159. Section 2615(a) of the <u>Family Medical Leave Act</u>, states in pertinent part:

Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

160.   Section 2615(b) of the Family Medical Leave Act, states in pertinent part:

Interference with proceedings or inquiries. It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual— (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter;

161.   DEFENDANTS violated these sections as set forth herein.

162.   While PLAINTIFF was out of the office on medical leave, as of February 3, 2021, PLAINTIFF became eligible for, and was entitled to, FMLA benefits.

163.   By that date she had been an employee of DEFENDANT ADAPT for 12-months and had worked over 1250 hours- exceeding the "hours of service requirement" under the Act.

164.   As per the FMLA at 29 CFR § 825.110(d) - Eligible Employee:

(d) The determination of whether an employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start. **An employee may be on non-FMLA leave at the time he or she meets the 12-month eligibility requirement, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA leave.** See § 825.300(b) for rules governing the content of the eligibility notice given to employees. [emphasis added]
29  FR § 825.110(d)

165.   DEFENDANTS had a legal duty/obligation to inform PLAINTIFF of her FMLA eligibility rights and benefits. However, PLAINTIFF was never advised of her rights under the FMLA, nor was she offered FMLA leave when she became eligible.

166.   PLAINTIFF continued to ask DEFENDANTS to explain her benefits and was given no such explanation.

167.   DEFENDANTS *did not* advise PLAINTIFF about FMLA. DEFENDANTS *did not* inform PLAINTIFF about medical leave, disability leave or short term disability.

168.   DEFENDANTS had every opportunity and occasion to inform PLAINTIFF of her rights

and explain the parameters of <u>FMLA</u> leave to PLAINTIFF.

169.   Nevertheless, DEFENDANTS intentionally refused/failed to inform PLAINTIFF of her FMLA right and, instead, DEFENDANTS forged (purported) <u>FMLA</u> paperwork under the PLAINTIFF'S name, while she was unaware.

170.   The <u>FMLA</u> paperwork was forged by DEFENDANTS to try to retroactively cover up their failures to inform and engage in an interactive dialogue with PLAINTIFF.

171.   DEFENDANTS also forged a letter to PLAINTIFF, backdated to January 15, 2021, stating that PLAINTIFF did not qualify for <u>FMLA</u>. This was also false.

172.   DEFENDANTS knew, or should have known with basic inquiry, that PLAINTIFF met the prerequisites for <u>FMLA</u> leave.

173.   Had DEFENDANTS informed PLAINTIFF of her rights and benefits, PLAINTIFF would have been on notice of DEFENDANT ADAPT's leave policy and could have taken the necessary steps to have her doctor re-evaluate her medical condition to see if she could resume her employment before the termination date.

174.   Had DEFENDANTS informed PLAINTIFF of her rights and ADAPT's policies, PLAINTIFF would not have been terminated.

175.   COLLECTIVE DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

176.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

177.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## AS A THIRD CAUSE OF ACTION FOR *DISCRIMINATION / RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW
### (*Against All Defendants ADAPT*)

178.   PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

179.   The New York State Executive Law § 296(1)(a) provides in pertinent part: "It shall be an unlawful discriminatory practice: For an employer . . . because of an individual's . . . age . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

180.   DEFENDANT ADAPT was PLAINTIFF'S employer.

181.   PLAINTIFF suffers from disabilities and DEFENDANT ADAPT perceived that PLAINTIFF has and/or suffers from disabilities.

182.   PLAINTIFF presented a doctor's notes to DEFENDANTS and sought a reasonable accommodations.

183.   ADAPT refused to accommodate PLAINTIFF and declined to engage in the interactive process when PLAINTIFF presented medical notes that her injuries were ongoing and required ongoing medical treatment.

184.   ADAPT was aware of its obligation to engage in an interactive process and to assess whether it could accommodate PLAINTIFF, short of termination.

185.   DEFENDANTS knew or should have known of their continuing obligation to accommodate PLAINTIFF under the ADA.

186.   DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations.

187.   DEFENDANTS engaged in an unlawful discriminatory practice by summarily terminating PLAINTIFF because of her disabilities and/or perceived disabilities.

22

188. As a result of her engagement in protected activity, DEFENDANTS ignored and denied PLAINTIFF her rights, while keeping her in the dark about her employment, in an ongoing effort to humiliate PLAINTIFF.

189. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

190. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW (*Individual Liability against DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON*)

191. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

192. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

193. INDIVIDUAL DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON violated the section cited herein as set forth and were each directly involved in the discriminatory and actions about which PLAINTIFF complains herein.

194. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON utilized their powers, authorities, statuses, and positions to subject PLAINTIFF to the wrongful termination outlined in this Complaint and to assist their employer ADAPT in unlawful discriminatory practices against PLAINTIFF.

195. But for DEFENDANTS ROBINSON'S, DOMBROWSKI'S and DONALDSON'S positions, ROBINSON, DOMBROWSKI and DONALDSON would not have been able or authorized to assist DEFENDANT ADAPT in continuing the discriminatory campaign against PLAINTIFF.

196. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON, acting pursuant to their authorities, ignored DEFENDANT ADAPTS' own policies, procedures, and rules regarding discriminatory behavior in the workplace.

197. At all times, DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON were aware of their obligations to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.  ROBINSON, DOMBROWSKI and DONALDSON were able to properly administer any

   policies of ADAPT, engage in interactive processes with PLAINTIFF, properly inform PLAINTIFF of her rights and obligations under ADAPT'S policies and respond to reasonable inquiries of PLAINTIFF concerning her disabilities and medical leave.

198. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON failed/refused to do so to the detriment of PLAINTIFF.

199. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON are individually liable for aiding and abetting the discriminatory actions of the employer, DEFENDANT ADAPT.

200. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

201. As a result of DEFENDANTS ROBINSON'S, DOMBROWSKI'S and DONALDSON'S discriminatory treatment of PLAINTIFF, she is suffering severe emotional distress.

202. PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and

suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

203. DEFENDANT ROBINSON'S, DOMBROWSKI'S and DONALDSON'S conduct were malicious, willful, outrageous, and conducted with full knowledge of the law.

204. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A FIFTH CAUSE OF ACTION FOR *DISCRIMINATION / RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Against CORPORATE DEFENDANT ADAPT)*

205. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

206. The Administrative Code of the City of New York § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

207. COLLECTIVE DEFENDANTS violated this section as set forth herein.

208. DEFENDANT ADAPT was PLAINTIFF'S employer.

209. PLAINTIFF suffers from disabilities and DEFENDANT ADAPT perceived that PLAINTIFF has and/or suffers from disabilities.

210. PLAINTIFF presented a doctor's notes to DEFENDANTS and sought a reasonable accommodations.

211. ADAPT refused to accommodate PLAINTIFF and declined to engage in the interactive process when PLAINTIFF presented medical notes that her injuries were ongoing and required ongoing medical treatment.

212.    ADAPT was aware of its obligation to engage in an interactive process and to assess whether it could accommodate PLAINTIFF, short of termination.

213.    DEFENDANTS knew or should have known of their continuing obligation to accommodate PLAINTIFF under the ADA.

214.    DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations.

215.    DEFENDANTS engaged in an unlawful discriminatory practice by summarily terminating PLAINTIFF because of her disabilities and/or perceived disabilities.

216.    As a result of her engagement in protected activity, DEFENDANTS ignored and denied PLAINTIFF her rights, while keeping her in the dark about her employment, in an ongoing effort to humiliate PLAINTIFF.

217.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

218.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS AN SIXTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Aider and Abettor Liability against DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON)*

219.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

220.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of

any of the acts forbidden under this chapter, or attempt to do so."

221. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON engaged in an

unlawful discriminatory practice in violation of New York City Administrative Code § 8-

107(6) by aiding, abetting,

inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct

of ADAPT.

222. INDIVIDUAL DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON

violated the section cited herein as set forth and were each directly involved in the

discriminatory and actions about which PLAINTIFF complains herein.

223. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON utilized their powers,

authorities, statuses, and positions to subject PLAINTIFF to the wrongful termination

outlined in this

Complaint and to assist their employer ADAPT in unlawful discriminatory practices

against PLAINTIFF.

224. But for INDIVIDUAL DEFENDANTS' positions, ROBINSON, DOMBROWSKI and

DONALDSON would not have been able or authorized to assist DEFENDANT ADAPT in

continuing the discriminatory campaign against PLAINTIFF.

225. DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON, acting pursuant to

their authorities, ignored DEFENDANT ADAPTS' own policies, procedures, and rules

regarding discriminatory behavior in the workplace.

226. At all times, DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON were

aware of their obligations to stop, prevent, investigate, and correct discriminatory practices

against PLAINTIFF. ROBINSON, DOMBROWSKI and DONALDSON were able to

properly administer any policies of ADAPT, engage in interactive processes with

PLAINTIFF, properly inform PLAINTIFF of her rights and obligations under ADAPT'S

policies and respond to reasonable inquiries of PLAINTIFF concerning her disabilities and medical leave.

227.   DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON failed/refused to do so to the detriment of PLAINTIFF.

228.   DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON are individually liable for aiding and abetting the discriminatory actions of the employer, DEFENDANT ADAPT.

229.   DEFENDANTS ROBINSON, DOMBROWSKI and DONALDSON had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

230.   As a result of DEFENDANTS ROBINSON'S, DOMBROWSKI'S and DONALDSON'S discriminatory treatment of PLAINTIFF, she is suffering severe emotional distress.

231.   PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

232.   DEFENDANT ROBINSON'S, DOMBROWSKI'S and DONALDSON'S conduct were malicious, willful, outrageous, and conducted with full knowledge of the law.

233.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## **JURY DEMAND**

234.   PLAINTIFF demands a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against DEFENDANTS:

A.   Declaring that ADAPT DEFENDANTS engaged in unlawful employment practices prohibited by the <u>Americans with Disabilities Act</u>, <u>New York City Administrative Code</u>,

and <u>New York State Human Rights Law</u> in that ADAPT DEFENDANTS discriminated against PLAINTIFF on the basis of her perceived disability and/or disability;

B.      Awarding damages to PLAINTIFF for all lost wages and benefits resulting from ADAPT DEFENDANTS' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.      Restoring PLAINTIFF to her employment along with her benefits and rights - including restoring PLAINTIFF'S backpay, lost benefits and otherwise restoring her to a position she had prior to the discriminatory conduct alleged herein;

D.      Awarding PLAINTIFF compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

E.      Awarding PLAINTIFF punitive damages;

F.      Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.      Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just, and proper to remedy the DEFENDANTS' unlawful employment practices.

Dated: New York, NY
          December 12, 2022

                                                            **PHILLIPS & ASSOCIATES,**
                                                            **ATTORNEYS AT LAW, PLLC.**


                                        By:     Gregory Calliste, Jr., Esq.
                                                    Alexandria Jean Pierre
                                                    *Attorneys for Plaintiff*
                                                    45 Broadway, Suite 430
                                                    New York, New York 10006
                                                    T: (212) 248-7431
                                                    F: (212) 901 - 2107
                                                    gcalliste@tpglaws.com
                                                    ajeanpierre@tpglaws.com

# Exhibit A

EEOC Form 161-B (01/2022)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Sia Ngegba**
     **1735 Fulton Ave. Apt. 2-E**
     **Bronx, NY 10457**

From:  **New York District Office**
       **33 Whitehall St, 5th Floor**
       **New York, NY 10004**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2021-04563** | **Michael Woo,** **Investigator** | **929-506-5348** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    More than 180 days have passed since the filing of this charge.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Timothy Riera
10/06/2022

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc:  **Isabella Dombrowski**
     **UNITED CEREBRAL PALSY OF NYC INC**
     **80 Maiden Ln Fl 8**
     **New York, NY 10038**

    **Yusha  D Hiraman**
    **Phillips & Associates**
    **45 Broadway, Suite 430**
    **New York, NY 10006**
    **Gregory Calliste**
    **GCalliste@tpglaws.com**